AO 106 (Rev. 7/87) Affidavit for Search Warrant

# United States District Court
## District of Delaware

In the Matter of the Search of:

Cellular Telephone Seized From
RASHEE LAMONT HUNTER

**APPLICATION AND AFFIDAVIT**

**FOR SEARCH WARRANT**

Misc. No. 05- 52 M

I, **Jeff Silvers**, being duly sworn, depose and say:

I am a(n) __Detective, Vice Unit, Wilmington Police Department__ and have reason to believe that

____ on the person of or  _x_  on the property or premises known as (name, description and/or location)

Cellular Telephone Seized from Rashee Lamont Hunter on January 15, 2005, and placed into the custody of officials of the Howard R. Young Correctional Institute, Wilmington,

in the District of _____Delaware_____

there is now concealed a certain person or property, namely (describe the person or property to be seized)

See Attachment A,

which is (state one or more bases for search and seizure set forth under Rule 41(c) of the Federal Rule of Criminal Procedure)
property that constitutes evidence, fruits and instrumentalities of the commission of narcotics offenses in violation of Title 21, United States Code, Sections 841(a)(1), and Title 18, United States Code, Section 922.

The facts to support a finding of Probable Cause are as follows:

See attached affidavit of Jeff Silvers.

Continued on the attached sheets and made a part hereof.   _X_ Yes   ___ No

Signature of Affiant
Det. Jeff Silvers, Wilmington Police Department

Sworn to before me, and subscribed in my presence
**March 16, 2005**                                  at   __Wilmington, Delaware__
Date                                                       City and State

Honorable Mary Pat Thynge
United States Magistrate Judge
District of Delaware
Name and Title of Judicial Officer                        Signature of Judicial Officer

AFFIDAVIT FOR SEARCH WARRANT FOR CELLULAR TELEPHONE

I, JEFFREY D. SILVERS, being duly sworn, depose and state that:

1. I am a member of the Wilmington Police Department, and have been so employed for seven years. For the past three years, I have been a member of the vice unit. I have extensive experience in narcotics investigations, and this includes the possession of firearms by drug dealers. I am familiar with the techniques used by drug dealers to illegally obtain firearms. I have training and experience in undercover operations, in executing search warrants, and in identifying the methods of distribution of narcotics by city dealers.

2. I submit this affidavit in support of a search warrant for a cellular telephone that was seized from RASHEE LAMONT HUNTER on January 15, 2005, as explained below. Although I do not know the description of the cell phone, I am aware that my colleague, Det. Andrea Janvier, seized the phone from Hunter's jacket at the time of his arrest. I am also aware that the cell phone is now being kept in the possession of the State officials at the Howard R. Young Correctional Institute with Hunter's other personal belongings, and that Hunter had only one cell phone on him. The cellular telephone was transferred to prison officials by the Wilmington Police Department at the time of Hunter's apprehension. I am also aware that at the request of ATF Agent Pat Fyock, prison officials have set aside the cellular telephone for further review in connection with the federal prosecution against Hunter.

3. Through my training and experience, I am aware that drug traffickers store names, telephone numbers, and contact information for individuals within their drug distribution network on their cellular telephones, to include, but not limited to: the identities of the heads of the narcotics trafficking organization, the identities of the individuals involved in the narcotics trafficking organization, the identities of the individuals who obtain the narcotics, the identities of the individuals who store the narcotics, the identities of the individuals who transport the narcotics, the identities of the individuals who distribute the narcotics, and the identities of the individuals who are responsible for the proceeds of the narcotics.

4. Through my training and experience, I am also aware that drug traffickers commonly communicate on their cellular telephones in furtherance of their drug trafficking activity, including, but not limited to real time conversations regarding drug trafficking, the utilization of voice mail messaging, text messaging, push to talk feature and/or other special features available to cellular telephone users.

5. The information contained in this affidavit is based on my personal observations and participation in this case as well as on my conversations with other members of the Wilmington Police Vice Unit. Because this affidavit is made in support of probable cause, not all facts known to me or relevant to this case are set forth below.

6. On January 15, 2005, at approximately 7:20 pm, TRACY LAMONT FISHER and Hunter were arrested by myself and Det. Janvier, my partner. Fisher and Hunter had driven in Fisher's car from Pennsylvania to Wilmington, and attempted to rob at gun point an individual

walking on Adams Street (near Fourth Street). This individual flagged down myself and my partner, and he pointed to Fisher and Hunter, who were still walking up Adams Street. We drove up to them in our marked car (we were wearing marked uniforms), and they began to flee. We then pursued Fisher and Hunter on foot until they were eventually apprehended. While fleeing, Fisher pointed a gun at me and placed his finger on the trigger and appeared prepared to shoot at me. He then decided to throw the gun away. The gun was retrieved, and later that evening, it was confirmed to be a stolen firearm by Chester Police Department.

7. While Hunter was fleeing, Janvier and I observed that he was wearing a black leather jacket with a brown sweatshirt with what appeared to be a hood. During the course of his flight through alleys near Adams Street and a back yard neighboring the alley, Hunter discarded both. After Hunter's apprehension, Det. Janvier retraced her steps and located Hunter's jacket inside the back yard. Inside Hunter's black jacket, Det. Janvier found a loaded .25 caliber Sterling Model 300 semi-automatic pistol, which we later determined to also be stolen (based on a report by the Chester Township Police Department). In addition, Det. Janvier found one small clear ziplock bag containing a white powdered substance that field tested positive for cocaine (approximate gross weight of 1 gram). The jacket also contained a cellular telephone.

8. After being advised of his *Miranda* rights by ~~myself~~ Det. Pfaff, 3-16-05, and acknowledging that he understood them, Hunter stated that he traded a drug addict (whom he referred to as a ____ later 3.16.05 "basehead") a few "dime bags" of cocaine for the gun in Chester, PA. Hunter admitted to me to being in possession of the firearm and two $10 bags of cocaine ("dime bags"). Hunter's use of drug slang terminology, his admission to distributing cocaine, and his possession of cocaine indicated to me that he was a drug dealer. Hunter is believed to be from the Chester area, based on his providing a Chester address when previously arrested on resisting arrest charges in Wilmington. Hunter is known to use the alias Terbren E. Hunter.

9. Fisher is also from Pennsylvania. A review of his PA identification confirmed this to be true. It lists his address as Philadelphia, and it was issued in 2004. Keys that resembled car keys were found on Fisher. Fisher has a previous felony conviction for a crime involving assault and robbery and, according to NCIC, homicide. I asked Hunter how he came to Wilmington, and he stated that he took the train. Hunter also denied to me knowing Fisher. However, because both men are from Pennsylvania, and given the other circumstances set forth herein, his statements did not appear credible.

10. While completing the processing of Hunter and Fisher that evening, Det. Janvier recalled that a cellular telephone was seized from Fisher. In an attempt to determine the extent of Hunter and Fisher's relationship, Janvier searched the names on the speed dial function of the cellular telephone and found the name "TRACY". She pushed that button and it called a voicemail with a male voice instructing callers to leave a message. Janvier did not conduct a further search of the telephone.

11. Later that evening, officers located a car with Fisher's paperwork inside of it parked

in front of 506 North Adams Street, in Wilmington, near the location where Fisher and Hunter were arrested.

    12. Based on the foregoing, there is probable cause to believe that Hunter is engaged in narcotics distribution, in violation of 21 U.S.C. §841(a)(1), and that Hunter is also engaged in the illegal acquisition of stolen firearms, in violation of 18 U.S.C. §922. Based on my training and experience, I have reason to believe that evidence of Hunter's illegal activities, such as his drug associates, will be found within his cellular telephone. Furthermore, based on the circumstances known to me regarding the arrest of Hunter and Fisher, the fact that both were in possession of firearms reported stolen from the Chester, PA, area, the fact that both were attempting to hold-up an individual, the fact that both are from Pennsylvania, and the seizure of Fisher's car in Wilmington and Fisher's car keys, I have reason to believe that the cellular telephone will contain evidence of Hunter's aiding and abetting and/or conspiring with Fisher in the possession of stolen firearms, and in the possession of a firearm by a felon, in violation of 18 U.S.C. §§922(g)(1) and (j) and 18 U.S.C.§§ 2 and 371.

    WHEREFORE, based on the foregoing, I respectfully request that the Court issue a search and seizure warrant for the items on Attachment A to be seized from Hunter's cellular telephone, such telephone having been seized from his person and now in the custody of prison officials. <u>In the event that Hunter's cellular telephone has not been isolated from other cellular telephones and prison officials cannot provide me with reasonable assurance that the phone to be searched is the phone collected with Hunter's belongings, I will not conduct a search pursuant to this warrant without further authorization from the Court.</u>

    I swear under penalty of perjury that the above is true and correct to the best of my knowledge and belief.

                                              Det. Jeffrey D. Silvers
                                              Vice Unit
                                              Wilmington Police Department

Sworn to and subscribed before me this \_\_16\_\_ day of March, 2005.

THE HONORABLE MARY PAT THYNGE
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### *ITEMS TO BE SEIZED*

All information and data stored in the cellular telephone described in Attachment A, or which can be retrieved therefrom, including, but not limited to, retrieved and un-retrieved voice mail and text messages, numerical data relating to dialed and/or received calls, and the electronic phone book, including names, nicknames, telephone numbers, and/or e-mail addresses.